**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

AMERICAN COMMUNICATIONS
NETWORK, INC., a Michigan corporation,

Case No. 07-00944

                Plaintiff,

Hon. Colleen Kollar-Kotelly

v.

(TRANSFERRED FROM EASTERN
DISTRICT OF MICHIGAN, CASE NO.
06-13241)

QWEST COMMUNICATIONS CORPORATION,
a Delaware corporation,

                Defendant.

---

**JOINT MOTION FOR ENTRY OF STIPULATED DISCOVERY ORDER
GOVERNING CUSTOMER PROPRIETARY NETWORK INFORMATION**

Plaintiff American Communications Network, Inc. ("ACN") and Defendant Qwest

Communications Corporation ("Qwest"), by and through their undersigned counsel, pursuant to

the August 9, 2007 Order of the parties' Arbitrator in the underlying Arbitration (attached as

**Exhibit 1**); Section 7 of the Federal Arbitration Act, 9 U.S.C. § 7 (2007); Section 222 of the

Telecommunications Act of 1996, 47 U.S.C. § 222 (2007); and Federal Rules of Civil Procedure

26(c), 34, and 45, jointly petition for a Stipulated Discovery Order compelling, and establishing

protective parameters for, the exchange of customer proprietary network information ("CPNI"),

as defined under the Telecommunications Act of 1996, 47 U.S.C. § 222(h)(i) (2007).  Prior to its

ransfer to this District Court, this civil action was stayed under the Federal Arbitration Act, 9

U.S.C. § 3, pending completion of the parties' arbitration proceeding currently pending before

the American Arbitration Association (AAA"), Arb. No. 16-145-Y-00030-7 ("Arbitration").

Good cause exists for the issuance of the requested Stipulated Discovery Order as follows:

### A.    Procedural History

ACN and Qwest are parties to a 1996 Representative Agreement under which ACN

obtained customers for Qwest telecommunications services and Qwest paid ACN commissions

on those accounts.  The Agreement provides for arbitration to be held in Washington, DC under

the auspices of the AAA.  (Additional background facts are recited in the Opinion and Order

attached as **Exhibit 2**.)

On July 18, 2006, ACN filed suit in U.S. District Court for the Eastern District of

Michigan, alleging, *inter alia,* a failure by Qwest to pay certain commissions due to ACN.

Following Qwest's motion to dismiss or transfer the case to this Court, and ACN's filing of its

First Amended Complaint, ACN filed a Demand for Arbitration with the AAA on January 8,

2007, initiating the Arbitration.  ACN then filed a motion to stay the federal case pursuant to

Section 3 of the Federal Arbitration Act, 9 U.S.C. § 3, pending the completion of the Arbitration,

and Qwest filed a renewed motion to dismiss the federal case.  On April 12, 2007 Judge Zatkoff

of the Eastern District of Michigan entered an Opinion and Order granting ACN's motion to stay

the case pending the Arbitration under Section 3 of the Federal Arbitration Act, and denying

Qwest's motion to dismiss, noting "the important role of the district court during the arbitration

process envisioned by the Act" under Sections 5 and 7 of the Federal Arbitration Act.  (Order of

April 12, 2007, **Exhibit 2** at 8-9.)

The parties subsequently stipulated to the transfer of the civil action to this Court, for the

convenience of the parties, pursuant to 28 USC § 1404(a).  (Stipulation, **Exhibit 3** hereto.)

Pursuant to that stipulation, Judge Zatkoff transferred the case to this Court (Order of Transfer,

**Exhibit 4** hereto), where the case has remained stayed under Section 3 of the Federal Arbitration

Act.

**B.      Summary Of Requested Relief**

This petition arises because many of the parties' discovery requests in the underlying

Arbitration implicate protected "customer proprietary network information," as defined in the

Telecommunications Act of 1996 at 47 U.S.C. §222(h)(1) and protected under state privacy laws

and regulations ("CPNI"), which prohibits disclosure of CPNI except under certain

circumstances.  One of the exceptions permits disclosure of such information "as required by

law."  47 U.S.C. § 222(c)(1).  A possible conflict exists between the parties' obligations to

comply with the parties' discovery requests and the Arbitrator's discovery orders on the one

hand, and the parties obligations to comply with the Telecommunications Act on the other hand.

To avoid any potential conflict, the Arbitrator on August 9, 2007 entered the Arbitrator's

Order Upon Stipulation Of Parties Regarding Customer Proprietary Network Information

("CPNI Order"), in the form attached hereto as **Exhibit 1**.  In his CPNI Order, the Arbitrator

directed, among other things:

> 1.      The parties shall jointly and promptly pursue the issuance of a
> stipulated order from the United States District Court for the District of Columbia
> ("Federal Court"), said motion to be filed no later than August 17, 2007, that (i)
> compels the disclosure of customer proprietary network information ("CPNI")
> protected by the Federal Telecommunications Act of 1996, state law and state
> codes, from Qwest in response to ACN's First and Second Sets of Discovery
> Requests, and from ACN in response to Qwest's First Set of Discovery Requests;
> and (ii) provides that such compelled disclosure be made pursuant to the terms of
> a protective order (collectively, "Federal Court Order") limiting the usage and
> dissemination of the disclosed information in a manner not inconsistent with the
> terms of this Order; …
> ….
> 3.      The parties shall jointly and promptly pursue and move for the
> entry of such Federal Court Order containing the same terms and limitations for
> the protected and limited dissemination of CPNI CONFIDENTIAL information
> as identified in the Stipulated Protective Order entered in these arbitration
> proceedings on August 9, 2007, such Stipulated Protective Order being attached
> and fully incorporated into this Order as Exhibit A.  . . . .

      4.      The parties shall jointly seek from the Federal Court as part of its Federal Court Order, a provision confirming the authority of the Arbitrator to rule on further disputes relating to CPNI CONFIDENTIAL information (as defined in Exhibit A), in accordance with discovery powers granted to arbitrators under the Federal Arbitration Act. If such CPNI discovery issues cannot be resolved by agreement, any Party may file a motion with the Arbitrator to determine the propriety of the designation, pursuant to the provisions of Exhibit A hereto or on terms determined by the Federal Court, as may be appropriate.

Arbitrator's CPNI Order, **Exhibit 1** at pp. 1 - 2.

Pursuant to the Arbitrator's CPNI Order, the parties seek entry of the proposed Stipulated Discovery Order attached as **Exhibit 3**.

### C.      The Court's Jurisdiction And Authority To Assist Arbitrator

The Arbitrator's August 9, 2007 CPNI Order directs the parties to petition this Court for an order that will enable the parties to produce CPNI information and documents relevant to the Arbitration. This Court has the jurisdiction and authority to enter the proposed Stipulated Order attached as **Exhibit 5**.

The federal district court's original jurisdiction derives from the parties' diversity of citizenship and the amount in controversy pursuant to 28 U.S.C. § 1332. Under its diversity jurisdiction, the district court has the authority to compel arbitration between the parties and to stay this civil action pending completion of the Arbitration, pursuant to Section 3 of the Federal Arbitration Act. The stay of the arbitration entered by the Eastern District of Michigan court remains in effect following the transfer of the action to this Court.

This Court retains jurisdiction over this matter, and the stay pending arbitration does not prevent this Court from exercising its jurisdiction to enter the requested motion to assist the arbitration process. *See LaPrade v. Kidder Peabody & Co., Inc.*, 146 F.3d 899, 903 (D.C. Cir. 1998) (notwithstanding stay district court may enter procedural order to protect arbitration

proceedings); *Smiga v. Dean Witter Reynolds, Inc.*, 766 F.2d 698, 705 (2d. Cir.1985) ("a court which orders arbitration retains jurisdiction to determine any subsequent application involving the same agreement to arbitrate.").  Indeed, the Michigan court's Opinion and Order granting the stay specifically contemplates the parties' potential need for federal court assistance during the course of the arbitration.  *See* **Exhibit 2** at 8-9.

Furthermore, Section 7 of the Federal Arbitration Act specifically contemplates an active role for this Court in assisting the Arbitrator in compelling production of witnesses and their documents.  More specifically, Section 7 provides in relevant part that "[t]he arbitrators … or a majority of them, may summon in writing any person to attend before them or any of them as a witness and in a proper case to bring with him or them any book, record, document or paper which may be deemed material as evidence in the case."  Whenever a federal court properly orders or directs that arbitration be commenced, the court out of necessity retains authority to enforce related arbitration procedures.  *See Western Emp. Ins. Co. v. Merit Ins. Co.*, 492 F. Supp. 53 (N.D. Ill. 1979). *See also Local Lodge 1746, Intern. Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Pratt and Whitney Division of United Aircraft Corp.*, 329 F. Supp. 283 (D.C. Conn. 1971) (where jurisdiction exists to order arbitration, court has authority and obligation to enforce lawful arbitration procedures).

## D.       Authority To Enter Stipulated Protective Order

Here, this Court's procedural assistance is required to enable the parties to comply with the Arbitrator's orders regarding production of relevant documents without potentially violating the provisions governing CPNI in the Telecommunications Act.  If not compelled by this Court to disclose the information as directed by the Arbitrator, Qwest and ACN might be subject to

multiple privacy lawsuits relating to the numerous accounts involved in the claims in this arbitration.

Under the Telecommunications Act, a federal court may compel production of CPNI by litigants under appropriate safeguards. In a factually similar case where a telecommunications carrier sought protection against discovery requests seeking CPNI, a federal court determined good cause existed for the entry of a protective order, and allowed limited production of CPNI under conditions ensuring that the recipients maintained the privacy of the material. *See ICG Communications v. Allegiance Telecom,* 211 F.R.D. 610, 614 (N.D. Cal. 2002).

The *ICG* court analyzed the key phrase, "except as required by law" in 47 U.S.C. §222(c)(1), and held that a federal court could compel disclosure of otherwise protected CPNI because its discovery orders "have the force and effect of a federal statute." The *ICG* court held that the Federal Rules of Civil Procedure, through the Rules Enabling Act, have the force of a federal statute, and thus, fit the limited parameters of the exception in the Telecommunications Act allowing disclosure.

In this civil action, the Federal Rules of Civil Procedure are similarly implicated because Section 7 of the Federal Arbitration Act empowers this Court to compel the attendance of witnesses and their production of documents "in the same manner provided by law for securing the attendance of witnesses or their punishment for neglect or refusal to attend in the courts of the United States" – i.e. Federal Rules of Civil Procedure 26(c) and 45. Accordingly, this Court has the authority to issue the stipulated order per the authority of 9 U.S.C. § 7, 47 U.S.C. § 222(c)(1) and Federal Rules 26(c), 34, and 45.

WHEREFORE, the parties respectfully request (1) that this Court enter an order per the terms of the proposed Order accompanying this motion (**Exhibit** 5), or upon such terms as the Court deems just, and (2) that following the entry of the proposed Order, this case remain stayed, per the agreement of the parties and the Order of the Eastern District of Michigan court, pursuant to Section 3 of the Federal Arbitration Act, pending the outcome of the Arbitration, or until such time as additional assistance of the Court may be required in relation to matters outside the scope of the Arbitrator's authority.

Respectfully submitted,

*s./ Joshua M. Bobeck*
Joshua M. Bobeck
DC Bar No. 443620
BINGHAM MCCUTCHEN LLP
2020 K Street NW
Washington, DC 20006-1806
Tel.:  202.373.6010
Fax.:  202.373.6414
E-mail: Josh.Bobeck@Bingham.com

*Counsel for Plaintiff*
*American Communications Network, Inc.*


*s./ Peter M. Falkenstein*
Peter M. Falkenstein
Jaffe Raitt Heuer & Weiss, PC
201 S. Main St., Suite 300
Ann Arbor, Michigan 48104
Tel.: 734.222.4776
Fax.: 734.222.4769
E-mail:  pfalkenstein@jaffelaw.com

*Co-Counsel for Plaintiff*
*American Communications Network, Inc.*


*s./ James V. DeLong*
James V. DeLong
DC Bar No. 202499
Kamlet Shepherd & Reichert, LLP
1747 Pennsylvania Avenue, Suite 800
Washington, D.C.  20006
Telephone:  (202) 302-5827
Facsimile:  (202) 302-8576
Email:  jdelong@ksrlaw.com

*Counsel for Defendant*
*Qwest Communications Corp.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a copy of the foregoing was served upon all parties of record, via first-class mail, postage prepaid, on this day August 17, 2007.

/s/ Joshua M. Bobeck

# EXHIBIT 1

## BEFORE THE AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration Between

**American Communications Network, Inc.,**
            Claimant,

v.

AAA Case No.: 16-145-Y-00030-07
Arbitrator: Howard G. Slavit

**Qwest Communications Corporation,**
            Respondent

## ARBITRATOR'S ORDER UPON STIPULATION OF PARTIES REGARDING CUSTOMER PROPRIETARY NETWORK INFORMATION

The Arbitrator has reviewed ACN's Motion to Compel Discovery and Qwest's Motion for Protective Order regarding the protection from disclosure of certain customer information protected under the federal Telecommunications Act of 1996 and other state laws and codes ("Qwest Motion"), as well as discussion and comments from both Claimant ACN and Qwest in a teleconference held July 11, 2007, the Stipulated Protective Order jointly submitted by the parties July 31, 2007, and the other filings with the American Arbitration Association by the parties

The Arbitrator finds that there is good cause for the issuance of this stipulated order so as to protect the privacy expectations of telecommunications customers that are afforded such privacy expectations under federal and state law. The Arbitrator finds that both Claimant and Respondent might be subject to liability from customers whose protected information is subject to disclosure in the absence of a lawful order requiring such disclosure, or in the event written customer consent is not obtained prior to disclosure. In order to protect Claimant and Respondent from such potential liability in their disclosure of information and documents within this Arbitration proceedings, and in accordance with federal Telecommunications Act of 1996, the Arbitrator ORDERS as follows:

1 The parties shall jointly and promptly pursue the issuance of a stipulated Order from the United States District Court for the District of Columbia ("Federal Court"), said motion to be filed no later than August 17, 2007, that (i) compels the disclosure of customer proprietary network information ("CPNI") protected by the Federal Telecommunications Act of 1996, state law and state codes, from Qwest in response to ACN's First and Second Sets of Discovery Requests, and from ACN in response to Qwest's First Set of Discovery Requests, and; (ii) provides that such compelled disclosure be made pursuant to the terms of a protective order (collectively, "Federal Court Order") limiting the usage and dissemination of the disclosed information in a manner not inconsistent with the terms of this Order; to wit:

2. Information designated as "CPNI CONFIDENTIAL" shall be information that is confidential and implicates federal, state and regulatory privacy interests of customers (financial and personal records, including CPNI as defined by the Telecommunications Act of 1996 and case law interpreting that Act) of LCI International Telecom Corp (Qwest's predecessor-in-interest), Qwest, and ACN, and as described in the Stipulated Protective Order entered in these arbitration proceedings

3. The parties shall jointly and promptly pursue and move for the entry of such Federal Court Order containing the same terms and limitations for the protected and limited dissemination of CPNI CONFIDENTIAL information as identified in the Stipulated Protective Order entered in these arbitration proceedings on August 9, 2007, such Stipulated Protective Order being attached and fully incorporated into this Order as Exhibit A The parties believe, to the best of their knowledge, that the issuance of the Federal Court Order in compliance herewith will satisfy all federal and state laws and regulations with regard to permitting and requiring the production of CPNI CONFIDENTIAL information, and neither party will thereafter take the position that it is not legally permitted to produce CPNI CONFIDENTIAL information The above notwithstanding, the parties do not waive any rights to object to the production of CPNI CONFIDENTIAL information on any other grounds recognized as a legitimate basis for objecting to discovery requests, and to withhold production of CPNI CONFIDENTIAL information that is the subject of any such objection, pending a ruling on the objection by the Arbitrator or the Federal Court

4. The parties shall jointly seek from the Federal Court as part of its Federal Court Order, a provision confirming the authority of the Arbitrator to rule on further disputes relating to CPNI CONFIDENTIAL information (as defined in Exhibit A), in accordance with discovery powers granted to arbitrators under the Federal Arbitration Act    If such CPNI discovery issues cannot be resolved by agreement, any Party may file a motion with the Arbitrator to determine the propriety of the designation, pursuant to the provisions of Exhibit A hereto or on terms determined by the Federal Court, as may be appropriate

5. Upon the issuance of such Federal Court Order or other Order(s) by the Federal Court, in the event the Order(s) do(es) not address the timeframe for the production of such information, the Arbitrator will issue a subsequent order governing the timing for the production of such information.

So ordered this 9th day of August, 2007.

_____

Howard G. Slavit, Arbitrator

**Exhibit A**

## BEFORE THE AMERICAN ARBITRATION ASSOCIATION

In the Matter of the Arbitration Between

**American Communications Network, Inc.,**
      Claimant,

v.

**Qwest Communications Corporation,**
      Respondent.

AAA Case No.: 16-145-Y-00030-07
Arbitrator: Howard G. Slavit

---

## STIPULATED PROTECTIVE ORDER

---

This matter is currently pending before the American Arbitration Association under Case No. 16-145-Y-00030-07 with Arbitrator Howard G. Slavit presiding. Claimant ("ACN") and Respondent ("Qwest") have both filed motions for entry of a Protective Order with respect to written discovery requests served by the other party. The parties each seek limitations on the manner of disclosure and dissemination of, and access to, any disclosed confidential information.

Both parties have also filed objections with respect to the scope of disclosure requested by the other party, and Qwest has moved for a protective order to re-allocate certain costs of production. With the exception of these matters, which remain pending, both Qwest and ACN have reached an agreement that is subject to the scope and cost re-allocation ruling of this Arbitrator. The terms of this Stipulated Protective Order contain two levels of protection to govern the disclosure of confidential information. The higher level of protection described herein is provided for protection and/or limitation of disclosure of customer proprietary consumer information ("CPNI"), which will serve as the further basis of a Stipulated Order by the Arbitrator requiring the parties to jointly seek and obtain an Order from the United States

{

District Court for the District of Columbia ("Federal Court") establishing the terms relating to disclosure of CPNI ("CPNI Protective Order"), and intending to adopt the terms set forth in the Stipulated Order. The lower level of protection governs the disclosure of confidential or trade secret information not otherwise consisting of CPNI.

Upon the stipulation of the parties and the parties' showing of good cause, and satisfied that proper legal and equitable grounds exist for the entry of this Order, and in order to maintain an orderly process in the exchange of discoverable information, IT IS HEREBY ORDERED:

A.    As used in this Protective Order, "document" is defined as provided in Fed R.Civ.P. 34(a) and otherwise consists of all information produced or provided in response to the discovery requests propounded by the parties in these proceedings.

B.    Information designated as "CPNI CONFIDENTIAL" shall be information that is confidential and implicates federal, state and regulatory privacy interests of customers (financial and personal records including CPNI as defined by the Telecommunications Act of 1996) of LCI International Telecom Corp. (Qwest's predecessor-in-interest), Qwest, or ACN

C.    Information designated as "CONFIDENTIAL" shall be information that is identified as "Confidential" or "Trade Secrets" in the 1996 Representative Agreement, as well as computer software designs and applications. In addition, Qwest or ACN may designate as CONFIDENTIAL, any other information or documents Qwest or ACN has determined, in good faith, that the disclosure of such information would be detrimental to Qwest or ACN

D.    The designation of documents or information as CPNI CONFIDENTIAL and/or CONFIDENTIAL shall be effected by visibly marking such document CONFIDENTIAL or with words of similar import, either on the paper copies of documents produced, or

2

burned/electronically labeled in electronic format, and/or labeled on the CD-ROM, other disc(s)/diskette(s) and/or other computer drives produced containing media determined to be CONFIDENTIAL. Due to the vast amount of information that may be so designated, the parties may agree that the marking of CD-ROM, other disc(s)/diskette(s), and/or other computer drives, and paper copies of documents may be marked on the front pages of groups of such documents, on the surface of the disc(s)/diskette(s), or labeled upon or within the computer drive or marked on the first page of a collection of documents within the disc(s)/diskette(s), and/or computer drives, and that such marking will make the entire set or collection of information and/or documents CPNI CONFIDENTIAL and/or CONFIDENTIAL.

E.    In the event a computer disc and/or computer drive is marked CONFIDENTIAL and/or CPNI CONFIDENTIAL, the receiving party of that disc and/or computer drive bears and maintains responsibility that the information and/or data contained therein, when downloaded to a paper and/or manipulatable format shall be conspicuously marked as CONFIDENTIAL and/or CPNI CONFIDENTIAL. Where a CD, or other disk, diskette or drive, or other document is produced containing information that is subject to differing levels of confidentiality, the producing party bears the responsibility and obligation to identify for the receiving party what information is subject to which of the differing levels of confidentiality, by some means that is readily understandable and applicable by the receiving party.

F.    No information or documents marked or designated as CPNI CONFIDENTIAL or CONFIDENTIAL pursuant to this Protective Order shall be used by Qwest or ACN for any purpose other than in connection with this arbitration/litigation, and as expressly provided in this Protective Order.    No information or documents marked or designated CONFIDENTIAL may be disclosed by Qwest or ACN to anyone other than those persons

}                                          3

designated below in paragraph G, unless and until restrictions in this Protective Order are removed or modified by the Arbitrator or written agreement of the Parties.

       G.    All documents or information designated as CONFIDENTIAL shall be restricted to the following persons, provided that such individuals are informed of and agree to the terms of this Protective Order by execution of Exhibit A hereto:

      i.    The Arbitrator;

      ii.    Counsel who have appeared of record for any party in this arbitration and their partners, shareholders, associates, paralegal assistants, and secretaries who are regularly employed by such counsel and are actively engaged in assisting such counsel with respect to this arbitration;

      iii.    In-house or legal department counsel for any party in this arbitration and their paralegal assistants, and secretaries who are regularly employed by such counsel and are actively engaged in assisting such counsel with respect to this arbitration;

      iv.    Testifying or non-testifying experts or consultants and their staff members who are employed (not by contract) by such experts or consultants and are actively engaged in assisting with respect to this arbitration;

      v.    Up to two non-lawyer executives of any party;

      vi.    Any witness previously disclosed to the opposing side who is lawfully testifying in the arbitration proceeding;

4

vii.    Any certified shorthand or court reporters retained to report a deponent's testimony taken in this arbitration;

viii.   Persons shown on the face of the document to have authored or received it; and

ix      Any person whom the parties' attorneys both agree, in advance and in writing, may receive documents designated or marked as CONFIDENTIAL.

H       Further, all documents or information designated as CPNI CONFIDENTIAL shall be restricted to the following persons, provided that such individuals are informed of and agree to the terms of the Protective Order by execution of Exhibit A hereto, and subject to the entry of the CPNI Protective Order by the Federal Court:

i.      The Arbitrator;

ii.     Counsel who have appeared of record for any party in this arbitration and their partners, shareholders, associates, paralegal assistants, and secretaries who are regularly employed by such counsel and are actively engaged in assisting such counsel with respect to this arbitration;

iii     One in-house or legal department counsel for any party in this arbitration and their paralegal assistants, and secretaries who are regularly employed by such counsel and are actively engaged in assisting such counsel with respect to this arbitration;

iv      Testifying or non-testifying experts (so long as the non-testifying experts are not employees of the parties) or consultants and their

5

litigation support staff (employees only, not contractors) that are necessary to assist in the interpretation of the CPNI CONFIDENTIAL information;

v. One employee of the receiving party who is regularly employed for the primary purpose of data processing only in order to interpret the disclosed information for use by the receiving party's outside counsel and experts;

vi Any witness previously disclosed to the opposing side who is lawfully testifying in the arbitration proceeding;

vii One party executive that is necessary to participate in settlement negotiations; and

viii. Any certified shorthand or court reporters retained to report a deponent's testimony taken in this arbitration.

I. CPNI CONFIDENTIAL information does not include summaries of those documents containing CPNI CONFIDENTIAL information, so long as the summary does not include actual CPNI data, and so long as the summary is created solely for litigation or settlement purposes  Such summaries shall be treated as CONFIDENTIAL.

J. No person authorized under Paragraph G, or H of this Protective Order to receive access to documents or information marked or designated CPNI CONFIDENTIAL or CONFIDENTIAL until such person has received a copy of this Protective Order and agreed in writing to be bound by it by signing a copy of the agreement attached as Exhibit A to this Protective Order  The original of each such written agreement shall be maintained by the Parties' counsel.

}

Written challenges to the designation of information as CONFIDENTIAL and/or CPNI CONFIDENTIAL may be made at any time, but in no event shall such written challenges be filed and served upon opposing parties after the later of December 1, 2007 or fifteen (15) business days after receiving the documents labeled CONFIDENTIAL or CPNI CONFIDENTIAL. The opposing party shall then have seven (7) business days to file and serve a response to the challenge. Until a disputed written challenge is ruled upon, the designation of the information shall remain in full force and effect, and such information shall be accorded confidential treatment required by this Protective Order. In the event information is found to be improperly labeled, the arbitrator shall have the discretion to award to the objecting party sanctions, including its costs and fees in bringing the objection, if the initial classification of the information is found to have been made in bad faith or with no reasonable basis.

K.    If, during the course of a deposition, counsel for either party designates any part of the testimony as CPNI CONFIDENTIAL or CONFIDENTIAL, the deposition transcript shall be visibly marked on the cover page by the reporter as CONFIDENTIAL. Alternatively, within the later of thirty (30) days after the date the deposition testimony is given or fourteen (14) days after the deposition transcript is made available to counsel for the Parties, counsel for the Parties, or either of them may designate, by letter to all counsel, the Arbitrator, and the deposition reporter, any portion of the deposition transcript as CONFIDENTIAL under the terms of this Protective Order, and a copy of the letter shall be attached by the reporter and counsel to the cover page of all deposition transcripts that contain such CONFIDENTIAL testimony. This paragraph shall not be deemed or construed to authorize disclosure of any documents or information marked or designated CONFIDENTIAL to any person to whom disclosure is otherwise prohibited under this Protective Order. No witness shall retain a copy of

7

any exhibits marked CONFIDENTIAL, and such deposition exhibits shall be marked as CONFIDENTIAL and attached in a sealed envelope, marked as CONFIDENTIAL, to the deposition transcript for the original and the two copies of deposition transcripts for each counsel

    L. Any Party may file a motion with the Arbitrator for an appropriate modification of this Protective Order with respect to CONFIDENTIAL information. Further, any Party may object in writing to the Arbitrator regarding either Parties' production of documents or information that has been designated as CONFIDENTIAL.

    Furthermore, it is the intent of the parties that the CPNI Protective Order issued by the Federal Court shall include a provision conferring upon the arbitrator the authority to hear and determine disputes relating to the disclosure of information designated herein as CPNI CONFIDENTIAL. If such objection cannot be resolved by agreement, any Party may file a motion with the Arbitrator (or Court, if necessary) to determine the propriety of the designation. In any such motion, the moving Party shall identify the particular document designated CPNI CONFIDENTIAL or CONFIDENTIAL, and the reasons why such information should not be restricted. The document(s) which are the subject of such motion shall be treated in accordance with the designated CPNI CONFIDENTIAL or CONFIDENTIAL status pending the Arbitrator's or Court's decision on the motion.

    M. The taking of any action in accordance with the provisions of this Protective Order shall not be construed as a waiver of any claim or defense in the arbitration. Further, either Party's failure to designate as CPNI CONFIDENTIAL and/or CONFIDENTIAL any document in accordance with this Protective Order shall not preclude the filing of a motion in the arbitration (or Court, if necessary) at a later time seeking to impose such designation, and

any change in the designation shall operate prospectively only. Producing or receiving any information or document, or otherwise complying with the terms of this Protective Order, shall not (a) operate as an admission by any party that any particular information or document contains or reflects trade secrets or any other type of CONFIDENTIAL or CPNI CONFIDENTIAL information; (b) prejudice the rights of a party to object to the production of documents that the party does not consider to be within the scope of discovery; (c) prejudice the rights of a party to seek a determination that particular information or documents be produced; (d) prejudice the rights of a party to apply for further protective orders or further cost reallocations; or (e) prevent the parties from agreeing in writing to alter or waive the provisions or protections provided for herein with respect to any particular information or documents. Subsection (e) shall not apply to CPNI CONFIDENTIAL information.

N.     This Protective Order shall not be deemed or construed in any way to affect or to establish the admissibility or to waive the Parties' rights to object to the admissibility at the hearing of any CONFIDENTIAL document covered by this Protective Order.

O.     If either of the Parties inadvertently produces information subject to any privilege and/or work product doctrine, the Parties, upon notice from the other of the production and privilege, shall promptly return or destroy all such information, including all copies thereof and all documents incorporating or referring to such information.

P      Within 90 days after final termination of the arbitration and any confirmation/vacation/modification proceedings, including all appeals, the Parties' counsel and any recipient of any CONFIDENTIAL and/or CPNI CONFIDENTIAL information and/or document(s) under this Protective Order shall certify such return/destruction of documents and/or information by affidavit. Parties' counsel need not destroy or return CONFIDENTIAL

}                                                    9

and/or CPNI CONFIDENTIAL documents incorporated in materials filed in the arbitration, subject to the terms of this Protective Order. Parties' counsel need not destroy or return CONFIDENTIAL and/or CPNI CONFIDENTIAL documents or information incorporated in work product retained solely by counsel. In the event such CONFIDENTIAL and/or CPNI CONFIDENTIAL information is downloaded onto the attorney's computer, or his assistant/paralegal's computer, counsel shall certify under oath that the information has been hard-deleted from such computers.

This Protective Order shall remain in full force and effect, and is subject to further Orders regarding the scope of responsive information, Orders regarding the re-allocation of costs to disclose responsive information, and the CPNI Protective Order issued by the Federal Court, unless modified by a written stipulation of the Parties or a determination by the Arbitrator or Federal Court, if necessary. Without limiting the generality of the foregoing, this Protective Order shall survive or remain in full force and effect after the termination of the arbitration.

Dated this 9th day of August, 2007.

BY THE ARBITRATOR:

Howard G. Slavit

Stipulated and Approved as to Form and Content:

s/ Peter M. Falkenstein/
Peter M. Falkenstein
Counsel for Claimant

s/ Stephen D. Gurr/
Stephen D. Gurr
Counsel for Respondent

10

## EXHIBIT A TO PROTECTIVE ORDER

I _____, state and affirm that I have received
and read a copy of the Protective Order in this AAA Case No: 16-145-Y-00030-07, styled
*American Communications Network, Inc vs. Qwest Communications Corporation*, and agree to
abide by and be bound by the terms and conditions of the Protective Order.

By: _____

Name:_____

Title: _____

11

# EXHIBIT 2

<div align="center">

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

</div>

AMERICAN COMMUNICATIONS
NETWORK, INC.,

        Plaintiff,

                                            CASE NO. 06-13241

v                                          HON. LAWRENCE P. ZATKOFF

QWEST COMMUNICATIONS
CORPORATION,

        Defendant.

_____/

<div align="center">

**OPINION AND ORDER**

</div>

<div align="center">

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on April 12, 2007

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

</div>

<div align="center">

**I. INTRODUCTION**

</div>

This matter is before the Court upon Defendant's Motion to Dismiss (Docket #6) and Plaintiff's Motion to Stay (Docket #15). The parties have responded to the respective motions and the issues are fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers and the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. MICH. LR 7.1(e)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted. For the following reasons, Defendant's motion is DENIED and Plaintiff's motion is GRANTED.

<div align="center">

**II. BACKGROUND**

</div>

American Communications Network, Inc. ("ACN"), is a corporation in the business of

selling and distributing telecommunication services. Qwest Communications Corporation ("Qwest") is in the business of providing certain telecommunications technology and media-related products and services. Qwest is the successor in interest to LCI International Telecom Corp., a long distance provider.

In May 1996, ACN and LCI International entered into a Representative Agreement whereby ACN served as a representative of LCI to promote and solicit LCI's services to commercial and residential customers. Under the agreement, LCI paid ACN commissions for the particular LCI services sold. On June 5, 1998, Qwest acquired LCI.

On April 22, 2000, Qwest and ACN entered into a Partial Termination, Settlement and Release Agreement ("Qwest agreement"). Under this agreement, the parties agreed to terminate the Representative agreement with respect to the sale and solicitation of Qwest's non-consumer and non-residential products and services. Furthermore, Qwest also agreed that the Representative Agreement remained in effect with respect to the sale of Qwest's consumer and residential services. The agreement purported to be governed by New York law, and also contained the following arbitration provision:

> [A]ny claim or controversy arising out of or related to this Agreement, shall be settled by binding arbitration before a single arbitrator administered by the American Arbitration Association under its Commercial Arbitration Rules and Supplementary Procedures for Large, complex disputes, with the matter to be heard in Washington D.C. The arbitration shall be conducted in accordance with the United States Arbitration Act (Title 9, U.S. Code) notwithstanding any choice of law provision in this Agreement.

Representative Agreement ¶ 22. The Qwest agreement contains a similar arbitration provision also providing for venue in Washington, D.C. *See* Qwest Agreement ¶ 9.

In the present case, ACN alleges that Qwest breached its obligations to pay commissions to

2

Case 1:07-cv-00944-CKK Document 3-3 Filed 08/17/2007 Page 4 of 11

ACN pursuant to both the Representative Agreement and Qwest Agreement from July 2000 to the present. ACN filed its complaint on July 18, 2006, which included a count asking the Court to compel arbitration in accordance with the arbitration clauses in the two agreements.

On November 15, 2006, Qwest filed a Motion to Dismiss pursuant to the Federal Arbitration Act, arguing that all of ACN's claims were subject to arbitration and not properly before the Court. On January 9, 2007, ACN filed a Demand for Arbitration with the American Arbitration Association ("AAA"), and served Qwest with the original Demand for Arbitration pursuant to AAA rules.

As the parties did not dispute the existence, validity, and scope of the arbitration agreement, including the fact that all of ACN's claims were arbitrable subject to arbitration, ACN filed an amended complaint omitting its request to compel arbitration. ACN now moves for a stay in the current proceeding pursuant to 9 U.S.C. § 3, which states that the Court shall stay a proceeding where "any suit or proceeding [is] brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration." Thus, pending before the Court are Qwest's Motion to Dismiss and ACN's Motion to Stay.

### III. LEGAL STANDARD

A motion brought pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim upon which relief may be granted tests the legal sufficiency of Plaintiffs' claims. The Court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in Plaintiffs' favor. *See Jackson v. Richards Med. Co.*, 961 F.2d 575, 577-78 (6th Cir. 1992). While this standard is decidedly liberal, it requires more than the bare assertion of legal conclusions. *See Advocacy Org for Patients & Providers v. Auto Club Ins. Ass'n*, 176 F.3d 315, 319 (6th Cir. 1999). Furthermore, the Court need not accept as true legal conclusions or unwarranted factual inferences. *See Papasan*

3

*v. Allain*, 478 U.S. 265, 286 (1986). The Court may properly grant a motion to dismiss when no set of facts exists that would allow Plaintiffs to recover. *See Carter by Carter v. Cornwall*, 983 F.2d 52, 54 (6th Cir. 1993).

> The Federal Arbitration Act ("FAA" or "the Act") provides, in part, that:
>
> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. When hearing claims regarding an arbitration agreement, the court "may consider only issues relating to the making and performance of the agreement to arbitrate." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). Federal policy favors arbitration agreements, and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).

## IV. ANALYSIS

Congress enacted the Federal Arbitration Act "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). "The legislative history of the Act establishes that the purpose behind its passage was to ensure judicial enforcement of privately made agreements to arbitrate." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985). The FAA contains a presumption that written arbitration agreements are valid and enforceable and provides procedures for enforcing and effectuating these agreements. *See E.E.O.C. v. Waffle House, Inc.*, 534

4

Case 1:07-cv-00944-CKK Document 3-3 Filed 08/17/2007 Page 8 of 10

U.S. 279, 289 (2002); 9 U.S.C. §§ 3-5. These provisions "manifest a 'liberal federal policy favoring arbitration agreements'" *Gilmer*, 500 U.S. at 25 (quoting *Mercury Constr. Corp.*, 460 U.S. at 24)

As an initial matter, the Court finds that there is no dispute as to the validity of the arbitration agreement and the arbitrability of ACN's claims. Both parties agree that the arbitration clause in their contract broadly encompasses any and all disputes arising out of or related to the contract. Furthermore, the arbitration agreement incorporates the rules of the American Arbitration Association, and gives broad authority to the arbitrator, including authority to decide the scope of his own jurisdiction. In light of the parties' concurrence on this issue, the strong federal policy favoring arbitration and the presumption of validity contained in 9 U.S.C. § 2, and finding that the arbitration agreement was the result of arms length bargaining between two sophisticated parties and that there was no fraud, mistake, undue influence, illegality, or other grounds for revocation, the Court concludes that the arbitration agreement is valid and enforceable.

Rather than request a stay in this matter pending arbitration, Qwest has filed a motion to dismiss ACN's complaint, arguing that where all of the plaintiff's claims are subject to arbitration the complaint should be dismissed. *See Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161 (5th Cir. 1992). The Sixth Circuit has not ruled on this issue, but has noted that there is authority supporting dismissal when all claims are arbitrable. *See Green v. Ameritech Corp.*, 200 F.3d 967 (6th Cir. 2000). In response, ACN filed a motion to stay these proceedings pending arbitration, contending that the plain language of 9 U.S.C. § 3 precludes the Court from dismissing the complaint. In support, ACN relies on *Green Tree Financial Corp. v. Randolph*, 531 U.S. 79 (2000), asserting that *Green Tree* requires the Court to apply the plain language of the statute.

While the Supreme Court applied a plain meaning approach in *Green Tree*, that case involved a different section of the FAA and expressly left open the question of whether dismissal of a complaint in lieu of issuing a stay is permissible under § 3 of the FAA. Faced with the issue of whether the district court's dismissal of the plaintiff's complaint was a final decision for the purposes of 9 U.S.C. § 16(a), the Court stated that "[h]ad the District Court entered a stay instead of a dismissal in this case, that order would not be appealable. The question whether the District Court should have taken that course is not before us, and we do not address it." *Green Tree*, 531 U.S. at 87 n. 2. Furthermore, the Supreme Court unanimously refused to apply the plain language of other sections of the FAA in *Cortez Byrd Chips, Inc. v. Bill Harbert Const. Co.*, 529 U.S. 193 (2000) (holding that the sections 9-11 of the FFA supplemented venue requirements under 28 U.S.C. § 1391 despite the plain language limiting venue to the district court in the district where arbitration was taking place). *See also United States v. Rodgers*, 461 U.S. 677, 706 (1983) (finding that the plain language of a statute "can be defeated by obvious inferences from the structure and purpose of the statute"). Consequently, *Green Tree* does not completely foreclose the Court's ability to dismiss ACN's complaint under § 3 rather than issue a stay.

Notwithstanding the fact that *Green Tree* left open the question of the Court's discretion under § 3, the Supreme Court's holding that a dismissal combined with an order compelling arbitration is immediately appealable sheds light on the proper scope of the Court's authority in deciding whether to dismiss or stay. In that respect, the court's discussion in *Lloyd v. Hovensa, LLC*, 369 F.3d 263 (3d Cir. 2004) is instructive. In *Lloyd*, the district court granted the defendant's motion to compel arbitration and dismissed the plaintiff's complaint with prejudice, finding that all of the plaintiff's claims were subject to mandatory arbitration and that retaining jurisdiction would serve

6

no purpose. The Third Circuit reversed. Noting that the circuits have reached different results on the

issue, the Third Circuit found that the plain language of § 3 did not leave room for the court to

exercise discretion when faced with an application to stay under the FAA. *See id.* at 268-69. The

court reasoned that this reading of the statute harmonized with the Act's other sections which

provided for the court's assistance during arbitration even in those situations where all of the parties'

claims were subject to mandatory arbitration. *See id.* The court stated that "[i]f the plaintiff's case

has been dismissed rather than stayed, the parties will have to file a new action each time the Court's

assistance is required ...." *Id.* at 270. The court found this result to be inconsistent with the FAA's

goal of effectively promoting and facilitating arbitration. *See id.* "The legislative scheme of the FAA

thus reflects a policy decision that, if a district court determines that arbitration of a claim is called

for, the judicial system's interference with the arbitral process should end unless and until there is

a final award." *Id.* at 270.

The *Lloyd* court further recognized that in light of *Green Tree's* holding that a dismissal is

immediately appealable, by dismissing the case rather than issuing a stay, the district court deprived

the party urging arbitration of "the right to proceed with arbitration without the substantial delay

arising from an appeal." *Id.* at 271. "Stated conversely, the effect of recognizing an exception to the

mandatory directive of § 3 is to give the District Court the power to confer a right to an immediate

appeal that would not otherwise exist." *Id.* at 271. In contrast to its finding, the court noted that none

of the courts willing to endorse the district court's ability to dismiss cases under § 3 had provided

any reasoning why Congress "might have wanted a party entitled to arbitration to be subjected to

an immediate appeal or not depending on how his adversary has chosen to draft his complaint." *Id.*

7

at 271. Based on this reasoning, the Second Circuit concluded that its reading of § 3 was consistent with the FAA's statutory scheme and the strong national policy favoring arbitration.

In contrast to ACN, Qwest argues that the court in *Alford v. Dean Witter Reynolds, Inc.*, reached the correct result. There, the Fifth Circuit affirmed the district court's order dismissing the plaintiff's complaint in lieu of issuing a stay. *See Alford*, 975 F.2d at 1164. The plaintiff correctly asserted that under § 3 "a stay is mandatory upon a showing that the opposing party has commenced suit 'upon any issue referable to arbitration under an agreement in writing for such arbitration.'" *Id.* at 1164. Nevertheless, the court in *Alford* found that the mandatory language in § 3 merely removed the Court's discretion to deny a stay in such a situation. *See id.* Nothing in the statute, however, limited the ability of the court to dismiss the case under the proper circumstances. The court found that "[t]he weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Id.* (citing *Sea-Land Service, Inc. v. Sea-Land of P.R., Inc.*, 636 F. Supp. 750, 757 (D. P.R. 1986)). As stated in *Sea-Land*:

> Given our ruling that all issues raised in this action are arbitrable and must be submitted to arbitration, retaining jurisdiction and staying the action will serve no purpose. Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by law.

*Sea-Land*, 636 F. Supp. at 757. Accordingly, the *Alford* court affirmed the dismissal of the plaintiff's complaint with prejudice.

However, in light of *Green Tree* and *Lloyd*, the Court finds the reasoning in *Alford* unpersuasive. While *Alford's* statement regarding the scope of post-arbitration remedies remains correct, it overlooked the important role of the district court during the arbitration process envisioned by the Act, regardless of whether all claims were arbitrable. *See, e.g.*, 9 U.S.C. § 5

8

(providing court with authority to appoint an arbitrator); 9 U.S.C. § 7 (providing court with authority to compel appearance of witnesses). Furthermore, the fact that a disposition similar to *Alford's* would result in an immediate appeal frustrates the FAA's goal of removing the federal courts as an obstacle to enforcing valid agreements to arbitrate. *See Green Tree*, 531 U.S. at 86 (noting that decisions against arbitration are immediately appealable whereas decisions in favor of arbitration are not). As the court recognized in *Lloyd*, dismissing the case rather than issuing a stay would "confer a right to an immediate appeal that would not otherwise exist." *Lloyd*, 369 F.3d at 271. Thus, the Court agrees with the reasoning in *Lloyd* and finds that retaining jurisdiction in the present case is consistent with the purposes of the FAA and will better advance the Act's policies than dismissing the case.

Nevertheless, the Court is cognizant that merely retaining jurisdiction may not be sufficient to fully advance the FAA's policy in favor of arbitration. Significant to the present case, the parties have already begun the arbitration process in Washington, D.C., and the parties expressly chose Washington, D.C. as the forum in which to address all disputes arising out of their agreement. Accordingly, a transfer of venue may be appropriate in order to both facilitate the parties' arbitration process and provide ready access to a forum if disputes arise during and after that process. However, the record in this matter is not sufficient for the Court to determine whether a change in venue is proper. Specifically, the record is inadequate to determine whether this suit could have been brought as an original matter in Washington, D.C. Qwest, having alternatively argued for a change in venue in its Motion to Dismiss, bears the burden of demonstrating that a change in venue is proper.

## V. CONCLUSION

There is no dispute that the parties in this case have a binding agreement to arbitrate all

9

claims arising out of or relating to their agreement. Based on the foregoing analysis, the Court concludes that a stay is appropriate in this case. Accordingly,

IT IS ORDERED that Defendant's Motion to Dismiss is DENIED and Plaintiff's Motion to Stay is GRANTED.

IT IS FURTHER ORDERED that this matter is HEREBY STAYED pending the completion of the parties' binding arbitration.

IT IS FURTHER ORDERED that Defendant SHOW CAUSE as to why this case should be transferred to the United States District Court for the District of Columbia within ten (10) days of entry of this Order. Defendant's response shall address the issues of personal jurisdiction and venue, and shall be limited to ten (10) pages and comply with E.D. MICH. L.R. 5.1. Defendant shall also serve Plaintiff with a copy of its response within ten (10) days of entry of this Order. Plaintiff shall have seven (7) days from the date of receipt of Defendant's response to file its reply.

IT IS SO ORDERED.

<div style="margin-left:40%">

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

</div>

Dated: April 12, 2007

<div style="text-align:center">CERTIFICATE OF SERVICE</div>

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on April 12, 2007

<div style="margin-left:40%">

s/Marie E. Verlinde
Case Manager
(810) 984-3290

</div>

<div style="text-align:center">10</div>

EXHIBIT 3

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**American Communications Network, Inc.,**
a Michigan corporation,

                Plaintiff,

v.

**Qwest Communications Corporation,**
a Delaware corporation,

                Defendant.

Case No. 06-13241

Hon. Lawrence P. Zatkoff

Magistrate Judge R. Steven Whalen

---

Peter M. Falkenstein(P61375)
Patrice S. Arend (P56962)
JAFFE RAITT HEUER & WEISS, P.C.
201 Main Street, Suite 300
Ann Arbor, Michigan 48104
Telephone: (734) 222-4776
E-mail: pfalkenstein@jaffelaw.com
*Attorneys for Plaintiff*

Sheryl L. Toby (P39114)
Brendan G. Best, Esq. (P66370)
DYKEMA GOSSETT, PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, Michigan 48034
Telephone: (248) 203-0700
E-mail: bbest@dykema.com

Stephen D. Gurr, Esq. (CO #19789)
Amy E. Arlander, Esq. (CO #33200)
KAMLET SHEPHERD & REICHERT,
LLP
1515 Arapahoe Street
Tower 1, Suite 1600
Denver, CO 80206
Telephone: (303) 825-4200
E-mail: sgurr@ksrlaw.com
*Attorneys for Defendant*

---

## STIPULATION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)

---

    WHEREAS, in an Opinion and Order dated April 12, 2007, the Court denied Defendant's

motion to dismiss the case pursuant to the Federal Arbitration Act, and granted Plaintiff's motion

to stay the case pending the completion of arbitration; and

WHEREAS, Plaintiff has initiated and the parties are currently engaged in arbitration before the American Arbitration Association, with hearings scheduled to take place in Washington, D.C.; and

WHEREAS, in its April 12, 2007 Opinion and Order the Court requested Defendant to show cause why it should issue an order transferring the case to the United States District Court for the District of Columbia for the convenience of the parties and, particularly, to show that the case could have been brought in said District; and

WHEREAS, the parties agree that the case could have been brought in Washington, D.C., and further agree to transfer of the case to said federal court under certain conditions;

IT IS HEREBY STIPULATED by and between the undersigned parties, as follows:

1       The parties stipulate and  agree to the transfer of the case to the United States District for the District of Columbia pursuant to 28 U.S.C. § 1404(a), for the parties' convenience.

2.      The parties stipulate and agree that during the pendency of the arbitration Defendant will not seek a reconsideration, reversal, setting aside, or overruling in the District of Columbia court of this Court's April 12, 2007 Opinion and Order staying the case pending arbitration

3.      The parties stipulate and agree that nothing in this Stipulation or this Court's April 12, 2007 Opinion and Order shall restrict or preclude either party's ability to present to the arbitrator any applicable statute of limitations defenses or other defenses, or either party's right to contest the other party's assertion of any such defenses, none of which are conceded hereby.

IT IS SO STIPULATED AND AGREED.

By: _s/Peter M. Falkenstein/_
Peter M. Falkenstein(P61375)
Patrice S. Arend (P56962)
JAFFE RAITT HEUER & WEISS, P.C.
201 Main Street, Suite 300
Ann Arbor, Michigan 48104
Telephone: (734) 222-4776
E-mail: pfalkenstein@jaffelaw.com
*Attorneys for Plaintiff*

By: _s/Brendan G. Best/_
Sheryl L. Toby (P39114)
Brendan G. Best, Esq. (P66370)
DYKEMA GOSSETT, PLLC
39577 Woodward Avenue, Suite 300
Bloomfield Hills, Michigan 48034
Telephone: (248) 203-0700
E-mail: bbest@dykema.com

Stephen D. Gurr, Esq. (CO #19789)
Amy E. Arlander, Esq. (CO #33200)
KAMLET SHEPHERD & REICHERT,
LLP
1515 Arapahoe Street
Tower 1, Suite 1600
Denver, CO 80206
Telephone: (303) 825-4200
E-mail: sgurr@ksrlaw.com
*Attorneys for Defendant*

Dated: May 14, 2007

## UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**American Communications Network, Inc.,**
a Michigan corporation,

        Plaintiff,

v.

**Qwest Communications Corporation,**
a Delaware corporation,

        Defendant

Case No. 06-13241

Hon. Lawrence P. Zatkoff

---

### STIPLATED ORDER TRANSFERRING CASE
### PURSUANT TO 28 U.S.C. § 1404(a)

AT A SESSION of said Court, held in the United States Courthouse in the City of Port Huron, State of Michigan, on _____

PRESENT:  THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

WHEREAS, in an Opinion and Order dated April 12, 2007, the Court denied Defendant's motion to dismiss the case pursuant to the Federal Arbitration Act, and granted Plaintiff's motion to stay the case pending the completion of arbitration; and

WHEREAS, Plaintiff has initiated and the parties are currently engaged in arbitration before the American Arbitration Association, with hearings scheduled to take place in Washington, D.C.; and

WHEREAS, in its April 12, 2007 Opinion and Order the Court requested Defendant to show cause why it should issue an order transferring the case to the United States District Court

4

for the District of Columbia for the convenience of the parties and, particularly, to show that the case could have been brought in said District; and

WHEREAS, the parties have stipulated that the case could have been brought in Washington, D.C., and have further stipulated to transfer of the case to said federal court for the convenience of the parties, pursuant to certain conditions stipulated between the parties;

IT IS HEREBY ORDERED that, upon the Stipulation of the parties, dated April 30, 2007, and the Court being fully advised in the premises therefor:

1.    The April 12, 2007 Opinion and Order staying the case pending arbitration remains in effect.

2.    For the convenience of the parties, this case shall be transferred forthwith to the United States District Court for the District of Columbia, pursuant to 28 U.S.C § 1404(a).

3.    The Clerk of the Court is directed to transmit the case file to the Clerk of the Court of the District Court for the District of Columbia.

IT IS SO ORDERED.


_____
UNITED STATES DISTRICT JUDGE

# EXHIBIT 4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMERICAN COMMUNICATIONS
NETWORK, INC.,

        Plaintiff,

                                  CASE NO. 06-13241

v.                               HON. LAWRENCE P. ZATKOFF

QWEST COMMUNICATIONS
CORPORATION,

        Defendant
_____/

## STIPULATED ORDER TRANSFERRING CASE
## PURSUANT TO 28 U.S.C. § 1404(a)

WHEREAS, in an Opinion and Order dated April 12, 2007, the Court denied Defendant's motion to dismiss the case pursuant to the Federal Arbitration Act, and granted Plaintiff's motion to stay the case pending the completion of arbitration; and

WHEREAS, Plaintiff has initiated and the parties are currently engaged in arbitration before the American Arbitration Association, with hearings scheduled to take place in Washington, D.C.; and

WHEREAS, in its April 12, 2007 Opinion and Order the Court requested Defendant to show cause why it should issue an order transferring the case to the United States District Court for the District of Columbia for the convenience of the parties and, particularly, to show that the case could have been brought in said District; and

WHEREAS, the parties have stipulated that the case could have been brought in Washington, D.C., and have further stipulated to transfer of the case to said federal court for the convenience of the parties, pursuant to certain conditions stipulated between the parties;

IT IS HEREBY ORDERED that, upon the Stipulation of the parties, dated April 30, 2007,

and the Court being fully advised in the premises therefor:

1     The Court's April 12, 2007, Order staying the case pending arbitration remains in effect.

2.    For the convenience of the parties and in the interests of judicial economy and justice, this case shall be transferred forthwith to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1404(a)

3     The Clerk of the Court is directed to transmit the case file to the Clerk of the Court of the District Court for the District of Columbia.

II IS SO ORDERED.

s/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: May 16, 2007

CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 16, 2007.

s/Marie E. Verlinde
Case Manager
(810) 984-3290

2